UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
DAVID COHNE,                  )
                Plaintiff,    )
                              )
        v.                    )        CIVIL ACTION
                              )        NO. 17-12540-WGY
NAVIGATORS SPECIALTY INSURANCE )
COMPANY,                      )
                              )
                Defendant.    )
_____)
```

YOUNG, D.J.                                    February 19, 2019

**MEMORANDUM & ORDER**

## I.  INTRODUCTION

David Cohne ("Cohne") filed suit against Navigators
Specialty Insurance Company ("Navigators") requesting a
declaratory judgment that Navigators has a duty to defend and to
indemnify him in two actions pending in the Massachusetts
Superior Court sitting in and for the County of Suffolk.  Notice
Removal, Ex. B, Pl.'s Compl., ECF No. 1-4.  Cohne also alleges
breach of contract, breach of the covenant of good faith and
fair dealing, and violation of Massachusetts General Laws
chapters 93A and/or 176D ("93A/176D").  Id. at ¶¶ 23-40.  Cohne
seeks summary judgment on Navigators' duty to defend.  Pl.'s
Mot. Summ. J. Count I ("Pl.'s Mot."), ECF No. 25; Mem. Supp.
Pl.'s Mot. Summ. J. Count I, ECF No. 26 ("Pl.'s Mem.").

For the reasons set forth below, this Court declares that Navigators has no duty to defend, in essence ruling against Cohne pursuant to Federal Rule of Civil Procedure 56(f) (authorizing court to enter summary judgment against moving party under proper circumstances).

## A.   Procedural History

In November 2017, Cohne filed a complaint against Navigators in the Massachusetts Superior Court sitting in and for the County of Suffolk.  Pl.'s Compl.  Navigators removed the action to this Court the following month.  Notice Removal, ECF No. 1.  Cohne requests a declaratory judgment on Navigators' duty to defend and to indemnify him and alleges that Navigators breached its contract, breached the covenant of good faith and fair dealing, and violated 93A/176D.  Pl.'s Compl. ¶¶ 23-40.

In February 2018, Cohne filed a motion for judgment on the pleadings regarding Navigators' duty to defend and the parties fully briefed the issue.  Pl.'s Mot. J. Pleadings Count I, ECF No. 10; Mem. Law Supp. Pl.'s Mot. J. Pleadings Count I, ECF No. 13; Opp'n Def. Pl.'s Mot. J. Pleadings, ECF No. 17; Reply Mem. Supp. Pl.'s Mot. J. Pleadings Count I, ECF No. 18.  After a motion hearing in March 2018, the Court denied the motion without prejudice and administratively closed the case to await the outcome of the underlying state tort cases.  Electronic Clerk's Notes, ECF No. 20.

On Cohne's motion, the Court reopened the case in August 2018. Pl.'s Mot. Re-Open Administratively Closed Case, ECF No. 22; Electronic Clerk's Notes, ECF No. 24. In September 2018, Cohne filed a motion for summary judgment on Navigators' duty to defend, which the parties have now fully briefed. Pl.'s Mot.; Pl.'s Mem.; Opp'n Def. Pl.'s Mot. Summ. J. ("Def.'s Opp'n"), ECF No. 34; Pl.'s Reply Mem. Supp. Mot. Summ. J. Count I ("Pl.'s Reply"), ECF No. 36; Def.'s Sur-Reply Br. ("Def.'s Sur-Reply"), ECF No. 39. Cohne submitted a statement of undisputed facts, Local Rule 56.1 Statement Undisputed Facts Supp. Pl.'s Mot. Summ. J. Count I ("Pl.'s Statement Facts"), ECF No. 32, to which Navigators responded, Defs.' Resps. Pl.'s Rule 56.1 Statement Facts ("Resp. Statement Facts"), ECF No. 35.

On November 29, 2018, this Court heard oral argument on Cohne's motion for summary judgment and took it under advisement. See Electronic Clerk's Notes, ECF No. 41.

**B. Factual Background**

On both August 10 and August 19, 2014, the Boston Ballroom Corporation ("BBC") employed Cohne as a bouncer at the Royale Night Club (the "Club") on Tremont Street in Boston, Massachusetts. Pl.'s Statement Facts ¶¶ 2-3; Resp. Statement Facts ¶¶ 2-3; Pl.'s Mem., Ex. 2, Maltacea Compl. ¶¶ 9-10, ECF No. 26-2. Two lawsuits are pending in the Suffolk County Superior Court against Cohne and BBC, one brought by Keith

Yianacopolus ("Yianacopolus") and the other by James Maltacea ("Maltacea"), for incidents occurring at and near the Club. Pl.'s Statement Facts ¶¶ 1-4; Resp. Statement Facts ¶¶ 1-4. Navigators insured BBC from July 2, 2014 through July 2, 2015 pursuant to policy number CE14CGL136160IC (the "Policy"). Pl.'s Statement Facts ¶ 18; Resp. Statement Facts ¶ 18.

1. **The Yianacopolus Action**

In November 2016, Yianacopolus sued Cohne and BBC. Pl.'s Mem., Ex. 1, Yianacopolus Compl., ECF No. 26-1. He alleged that in the early morning hours of August 19, 2014, outside the front door of the Club, Cohne "suddenly," "without any warning," and "without provocation" committed an assault and battery against him. Id. at ¶¶ 7-10. "A short time later," Yianacopolus alleged, Cohne followed him "out onto the street and committed" a second assault and battery against him, "using a baton as a weapon." Id. at ¶ 11. Yianacopolus alleged that Cohne was "at all times . . . acting within the scope of his employment duties" and "under the direction and control" of BBC. Id. at ¶¶ 12-13.

Yianacopolus brought both a negligence and a civil assault and battery claim against Cohne. Id. at ¶¶ 15-19, 26-30. In the negligence claim, Yianacopolus alleged that Cohne's breach of his duty to use reasonable care as a doorman caused Yianacopolus' injury. Id. at ¶¶ 16-19. Yianacopolus further

[4]

alleged that at all relevant times he "exercised reasonable care for his own safety." Id. at ¶ 18.

In July 2018, Cohne's attorneys deposed Yianacopolus. Pl.'s Mem., Ex. 3, Yianacopolus Dep., ECF No. 26-3. There, Yianacopolus testified that he entered the Club at around eleven o'clock p.m. on the night of the incident and consumed alcohol. Id. at 37:10-24. He stated that at some point "around closing time" he left. Id. at 51:7-8. He testified that as he was trying to re-enter the Club to speak with a woman whom he had met earlier, id. at 53:3-19, 71:11-21, Cohne, who was working at the door, id. at 58:8-18, "negligently used excessive force" by "striking [him] in the face," id. at 64:20-65:18.

During his deposition, Yianacopolus agreed that a bouncer has an obligation to ensure the safety of patrons of the establishment for which he works, id. at 65:19-66:8, and clarified that the basis of his negligence claim is Cohne's failure to undertake safer alternatives to keep him out of the club and his assessment that Cohne used force "above and beyond what a bouncer should do in that situation," id. at 67:8-20. Yianacopolus was not able to provide specific examples of safer alternatives, but suggested that verbal warnings, which he claims Cohne failed to provide, would have been better than "his fist." Id. at 66:15-70:8.

In May 2018, Cohne provided sworn answers to
interrogatories from BBC about the incident at the core of
Yianacopolus' complaint.  Pl.'s Mem., Ex. 4, Cohne's Answers
Interrogs. ("Cohne's Answers") 3, ECF No. 26-4.  Cohne stated
that Yianacopolus "appeared to be intoxicated" when "attempting
to enter the [C]lub by pushing his way through the inside
hallway."  Id.  Cohne stated that he began by verbally telling
Yianacopolus not to enter, but Yianacopolus "proceeded to throw
his shoulder into [him] while making threatening remarks."  Id.
Cohne claimed that he then "made physical contact" with
Yianacopolus in a continued effort to prevent him from going
inside, after which "Yianacopolus subsequently threw a punch at
[him]."  Id.  Cohne stated that at that point he "feared for
[his] own personal safety," so he again "made physical contact
with [Yianacopolus]."  Id.

   2.   **The Maltacea Action**

In July 2017, Maltacea sued Cohne and BBC.  Maltacea Compl.
Maltacea alleged that on the early morning of August 10, 2014,
Cohne, while acting as a bouncer of the Club and "in the due
course of his employment . . . without provocation, right, or
reason, struck and beat [Maltacea] with a metal baton and caused
[him] severe physical injuries."  Id. at ¶¶ 9-10.  Maltacea's
complaint against Cohne includes one count of "Negligent and
Excessive Force," which alleges that Cohne "negligently caused

[6]

and did cause a harmful contact with [Maltacea]'s person." <u>Id.</u>
at ¶¶ 27-31.

3.   **Navigators' Policy**

Two parts of the Policy relate to this case: the Commercial
General Liability Coverage Form CG 00 01 04 13 ("CGLC"), Pl.'s
Mem., Ex. 5, Navigators Policy 13-28, ECF No. 26-5, and the
Assault And Battery And Negligent Supervision Limitation
("Limitation"), <u>id.</u> at 43-44.

The CGLC lays out the situations covered by the Policy.
<u>Id.</u> at 13-28.   In relevant part, the CGLC provides the
following:

> **1.   Insuring Agreement**
>
>> **a.**  We will pay those sums that the insured becomes
>> legally obligated to pay as damages because of
>> "bodily injury" or "property damage" to which this
>> insurance applies.  We will have the right and duty
>> to defend the insured against any "suit" seeking
>> those damages.   However, we will have no duty to
>> defend the insured against any "suit" seeking
>> damages for "bodily injury" or "property damage" to
>> which this insurance does not apply. . . .
>>
>> **b.**  This insurance applies to "bodily injury" and
>> "property damage" only if:
>>
>>> **1)**  The "bodily injury" or "property damage"
>>> is caused by an "occurrence" that takes place
>>> in the "coverage territory"; . . .
>
> **2. Exclusions . . .** This insurance policy does not apply
> to:
>
>> **a.**  "Bodily injury" or "property damage" expected
>> or intended from the standpoint of the insured.
>> This exclusion does not apply to "bodily injury"

> resulting from the use of reasonable force to protect persons or property.

Navigators Policy 13-14.

The CGLC defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 27. The CGLC specifies that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy," and "[t]he word 'insured' means any person or organization qualifying as such under Section II – Who is An Insured." Id. at 13. In addition, the Common Policy Declarations ("Declarations") refer solely to BBC as a "Named Insured." Id. at 3.

The Limitation is an endorsement that changes the general rule in certain circumstances. Id. at 43-44. In relevant part, the Limitation provides the following:

> **I.** Except as provided in item II below, this policy does not apply to "bodily injury," "property damage," or "personal and advertising injury" arising from:
>
> **A.** assault and/or battery committed or alleged to have been committed by any person; or
>
> **B.** physical assault, abuse, molestation, or habitual neglect; or licentious, immoral, amoral or other behavior that was committed or alleged to have committed by any insured or by any person for whom any insured is legally responsible; or

**C.** . . .

**D.** any act or omission connected directly or indirectly with the prevention or suppression of any act indicated in items A through C above including the protection of persons or property, whether caused by or at the instigation or direction of any insured, an insured's employee, an insured's patrons or guests, or volunteers working for or on behalf of an insured, or any other person.

This exclusion applies regardless of the legal theory or basis upon which the insured is alleged to be legally liable or responsible, in whole or in part, for any Damages arising out of assault, battery, physical abuse, and/or sexual abuse, including but not limited to assertions of improper or negligent hiring, employment or supervision, failure to protect the other party, failure to prevent the assault, battery, physical abuse and/or sexual abuse, or failure to discharge the employee.

**II.** Notwithstanding the foregoing, we shall pay up to the following amounts you become obligated to pay for all damages and claim expenses which result from claims or "suits" based on allegations of any of the acts or omissions in item I above.

    $250,000   any one claim or suit.
    $250,000   aggregate for the policy period.

Navigators Policy 43.

## II. ANALYSIS

Cohne contends that: (1) he is "an insured" under the Policy; (2) the two underlying complaints state negligence claims covered by the Policy; and (3) he qualifies as a "Named Insured," so even if the Policy would not ordinarily cover the underlying allegations, they are covered by an exception in Section II of the Limitation.  See Pl.'s Mem. 5-17.  Navigators refutes each of these arguments and contends that they have no duty to defend Cohne in either action.  See generally Def.'s Opp'n.  The Court concludes that Navigators is correct, but rests on somewhat different reasoning than that Navigators advances.

### A.    Standard of Review

A motion for summary judgment shall be granted when "there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Saunders v. Town of Hull, 874 F.3d 324, 326 (1st Cir. 2017) (citing Fed. R. Civ. P. 56(c)).  A genuine issue of material fact exists when the evidence is "sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side."  National Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995).  A fact is material when it "has the potential to change the outcome of the suit."  Calero-Cerezo v. United States Dep't of Justice, 355 F.3d 6, 19 (1st Cir.

2004) (citing <u>Parrilla-Burgos</u> v. <u>Hernandez-Rivera</u>, 108 F.3d 445, 448 (1st Cir. 1997)).

The moving party has the initial burden to show an "absence of evidence to support the nonmoving party's case." <u>Sands</u> v. <u>Ridefilm Corp.</u>, 212 F.3d 657, 661 (1st Cir. 2000) (citing <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 325 (1986)). When this is accomplished, the burden of production shifts to the nonmoving party to set forth specific facts to show that there is a genuine issue for trial. <u>Quinones</u> v. <u>Houser Buick</u>, 436 F.3d 284, 289 (1st Cir. 2006). The Court must examine the entire record in the light most favorable to the nonmoving party and draw all reasonable inferences in her favor. <u>O'Connor</u> v. <u>Steeves</u>, 994 F.2d 905, 907 (1st Cir. 1993).

**B.   The Yianacopolus Action**[1]

**1.   Cohne is an "Insured" under the Policy**

Cohne is an "insured" under the Policy "only for acts within the scope of [his] employment by [BBC] or while

---

[1] The Yianacopolus action involved two alleged incidents, one at the Club door and another outside in the street. <u>See</u> <u>supra</u> section I.B.1. For the purpose of evaluating whether Navigators has a duty to defend Cohne, the parties and this Court focus only on the first incident. <u>See</u> Pl.'s Mem. 9; Def.'s Opp'n 1. Pursuant to the "in for one, in for all" rule in insurance law, "where an insurer is obligated to defend an insured on one of the counts alleged against it, the insurer must defend the insured on all counts, including those that are not covered." <u>Mount Vernon Fire Ins. Co.</u> v. <u>Visionaid, Inc.</u>, 477 Mass. 343, 351–52 (2017). Cohne's own arguments give rise to an inference that it is unlikely the second alleged incident

performing duties related to the conduct of [BBC]." Navigators Policy 22. The parties dispute whether Cohne was acting within the scope of his employment when he committed the alleged misconduct. See Pl.'s Mem. 6-7; Def.'s Opp'n 3.

Under Massachusetts law, an employee's conduct falls within the scope of his employment if it: (1) "is of the kind he is employed to perform"; (2) "occurs substantially within the authorized time and space limits"; and (3) "is motivated, at least in part, by a purpose to serve the employer." Wang Labs., Inc. v. Business Incentives, Inc., 398 Mass. 854, 859 (1986).

Regarding the first prong, "it is ordinarily the actual and customary, rather than formally described, duties which determine scope of employment." Howard v. Town of Burlington, 399 Mass. 585, 590 (1987). When the employee's conduct at issue is a tort, "[t]he question is not whether the employee committed a tort, but whether he was performing the kind of work he was hired to perform when he allegedly committed the tort." Chase v. United States Postal Serv., Civ. A. No. 12-11182-DPW, 2013 WL 5948373, at *15 (D. Mass. Nov. 4, 2013) (Woodlock, J.).

Here, the alleged assault was committed when Cohne was performing his duty as a bouncer at the Club's door to protect the safety of its patrons, and thus the first Wang Labs. prong

---

(on the street) could give rise to a viable negligence claim. See generally Pl.'s Mem.

[12]

is met.  See 398 Mass. at 859.  The second prong is also met because the alleged assault occurred at the Club where Cohne was employed, and during his shift.  See id.

As to the third prong, "[t]he fact that the predominant motive of the agent is to benefit himself does not prevent the act from coming within the scope of employment as long as the act is otherwise within the purview of his authority."  Id.  In other words, this prong is not satisfied when the employee acted only "from purely personal motives . . . in no way connected with the employer's interests."  Pinshaw v. Metropolitan Dist. Comm'n, 402 Mass. 687, 694 (1988) (quoting W. L. Prosser & W. P. Keeton, Prosser & Keeton on the Law of Torts 506 (5th ed. 1984)).

Even if Cohne had harbored personal animus against Yianacopolus when he resorted to force against him, a reasonable factfinder would be hard-pressed to conclude that Cohne was not motivated at least in part by a purpose to serve the Club when he committed the alleged assault.  See Chase, 2013 WL 5948373, at *16 (specifying that even if the employee who committed the tort has been "concerned primarily with" his personal interest, the third prong of the Wang Labs. test is met).  Thus, the third prong is also met here.

The offensive nature of an intentional tort does not necessarily place it outside of an employee's scope of

employment.  See, e.g., McIntyre ex rel. Estate of McIntyre v.

United States, 545 F.3d 27, 38-47 (1st Cir. 2008) (upholding

district court's determination that FBI agent acted within scope

of his employment when he revealed informant's name to another

FBI source (a gang leader), leading to informant's murder);

Mangino v. United States, Civ. A. No. 05-12251-GAO, 2006 WL

2033196, at *3 (D. Mass. July 19, 2006) (O'Toole, J.) (rejecting

argument that doctor's alleged fraud was outside scope of his

employment because he was not hired to commit fraud, and

observing that Massachusetts law recognizes employer liability

for employees' negligence and intentional torts).

For an assault to be within the scope of employment, there

is an additional required showing that "the employee's assault

was in response to . . . conduct which was presently interfering

with the employee's ability to successfully perform his duties."

Miller v. Federated Dep't Stores, Inc., 364 Mass. 340, 350

(1973).  Assaults in this context "constitute acts committed

within the scope of employment, in that they stem from and

directly relate to the frustration of the ability to perform on

the assignments for which the employee is presently

responsible."  Id.

Here, the alleged assault[2] occurred when Yianacopolus demanded entry into the Club.  Pl.'s Statement Facts ¶¶ 15-17; Resp. Statement Facts ¶¶ 15-17.  Yianacopolus' demand interfered with Cohne's ability to perform his duty to protect the Club and prevent unauthorized access.  See Pl.'s Mem. 10.  Cohne's action was in direct response to this interference.  Pl.'s Statement Facts ¶¶ 15-17; Resp. Statement Facts ¶¶ 15-17.  Therefore, Cohne acted within the scope of his employment when committing the alleged assault.  See Commonwealth v. Jerez, 390 Mass. 456, 461-63 (1983) (holding employee's alleged intentional tort in response to interference with his exercise of his functions fell within his scope of employment).

Navigators' argument that Cohne's assault was not related to BBC's business is unavailing.  Navigators directs the Court's attention to Dilenno v. 25th Hour Inc., Civ. A. No. 92-3063-RPP, 1994 WL 3413, at *1 (S.D.N.Y. Jan. 5, 1994).  Def.'s Opp'n 3. In this case, a New York district court upheld a jury finding that a bouncer's battery against a would-be patron was outside the scope of his employment.  Dilenno, 1994 WL 3413, at *1.

---

[2] Because an employee's conduct requires an additional showing to be within the scope of employment if it was intentional, see Miller, 364 Mass. at 350-51 (holding that employee's assault is only in scope of employment if it was in response to "conduct which was presently interfering with the employee's ability to perform his duties successfully"), the Court assumes without deciding that Cohne assaulted Yianacopolus.

Multiple factors not present here led the court to conclude that the jury verdict was reasonable, including that the bouncer had "been provoked by plaintiff's actions and racist remarks and that he was a considerable distance away from the entrance" of the club when the assault occurred.  Id.

In the Yianacopolus action, Cohne is an "insured" under the Policy because he acted within the scope of his employment when committing the first alleged assault.

## 2. Applicability of the Policy to the Claims in the Underlying Yianacopolus Complaint

### a. The Standard Governing Duty to Defend

Under Massachusetts law, "[t]he legal standards governing an insurer's duty to defend are slightly different than those conventionally applied to a motion for summary judgment." Metropolitan Prop. & Cas. Ins. Co. v. Devlin, 95 F. Supp. 3d 278, 281 (D. Mass. 2015) (Saris, J.).  A court ought hold on summary judgment that an insurer has a duty to defend an insured if "the allegations in the third-party complaint are reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms."  Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 847 (1993).  "The duty to defend is determined based on the facts alleged in the complaint, and on facts known or readily knowable by the insurer that may aid in its interpretation of the allegations in the

complaint." Ferreira v. Chrysler Grp. LLC, 468 Mass. 336, 342(2014) (quoting Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 460 Mass. 352, 357(2011)). A duty to defend attaches when the underlying complaint shows, "through general allegations, a possibility that the liability claim falls within the insurance coverage." Billings v. Commerce Ins. Co., 458 Mass. 194, 201 (2010). It is not necessary "that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage." Id.

An insurer has no obligation to defend "when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose." Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 395-96 (2003) (internal citations and quotations omitted) (citing Timpson v. Transamerica Ins. Co., 41 Mass. App. Ct. 344, 347 (1996)).

### b. Consideration of Extrinsic Evidence

As a threshold matter, this Court must determine whether to consider evidence extrinsic to the underlying complaint because Cohne's argument that Yianacopolus provoked him relies on Cohne's Answers to Navigators' interrogatories. Pl.'s Mem. 8-9. Navigators urges the Court not to consider this extrinsic evidence, contending that it impermissibly contradicts the Yianacopolus complaint. Def.'s Sur-reply 2-3. This Court disagrees.

The Yianacopolus complaint brings both a negligence and an assault and battery claim against Cohne. Yianacopolus Compl. ¶¶ 15-19, 26-30. The complaint alleges that outside the front door of the Club, Cohne committed an assault and battery against Yianacopolus, which was "undertaken suddenly," "without any warning," and "without provocation." Id. at ¶¶ 5, 7-10. Yianacopolus' deposition testimony supplements these facts, alleging that Cohne "negligently used excessive force" by "striking [Yianacopolus] in the face" when trying to keep him out, and clarifies that the basis of his negligence claim is Cohne's failure to undertake safer alternatives to keep him out of the club. Yianacopolus Dep. 64:20-69:21.

Cohne's answers, however, tell a different story. Cohne stated that it was Yianacopolus who first threw his shoulder into Cohne and made threatening remarks. Cohne's Answers 3. Cohne stated that Yianacopolus then threw punches at him before Cohne "made physical contact" with Yianacopolus to prevent him from entering the Club and in fear for his personal safety. Id. These allegations contradict the Yianacopolus complaint, which allege that the plaintiff did not provoke Cohne. Yianacopolus Compl. ¶ 10.

Massachusetts courts may use extrinsic facts to aid their interpretation of underlying complaints, but "not as independent factual predicates for a duty to defend." Open Software Found.,

Inc. v. United States Fid. & Guar. Co., 307 F.3d 11, 15 (1st Cir. 2002) (interpreting Massachusetts law). Extrinsic facts are used to "add substance and meaning to skeletal claims only adumbrated in the complaint." Id. at 16. Courts are aware of the risk that extrinsic facts could be "misused by insureds seeking to transform a skeletal claim in the underlying complaint into an allegation arguably covered by the liability policy but unrelated to an actual claim in the complaint." Id. An insured may not, "in the absence of a complaint that requires coverage, force its insurer to defend the insured by simply telling the insurer facts which would create coverage." Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 406 Mass. 7, 15 (1989).

Cohne, relying substantially on House of Clean, Inc. v. St. Paul Fire & Marine Ins. Co., 705 F. Supp. 2d 102 (D. Mass. 2010) (Gorton, J.), argues that the Court ought consider the answers because they "add substance and meaning to [the] complaint's skeletal allegations." Pl.'s Reply 4. In House of Clean, the insurance policy excluded the discharge of pollutants in routine business activities but provided an exception to cover those pollutants that discharged in a "sudden and accidental" way. 705 F. Supp. 2d at 106 (internal citations and quotations omitted). The underlying complaint alleged that the insured released contaminants but did not contain any details showing

[19]

the release could have been sudden and accidental.  Id. at 107-09.  The court in that case rejected the insurance company's contention that the court ought not consider evidence that pollution was sudden and accidental because it came only in the form of "the biased affidavits of" the insured.  Id. at 108. Acknowledging that the insured's affidavit "must be carefully scrutinized for bias," the court held that such extrinsic facts added substance to the underlying claims and created a factual dispute as to whether the release was "sudden and accidental." Id. at 109.  Navigators attempts to distinguish House of Clean by arguing that the additional information in that case supplemented the underlying plaintiff's complaint, while here the answers contradict Yianacopolus' version of the facts. Def.'s Sur-reply 2-3.

House of Clean, Inc. is analogous to the case at bar. Although "an insurer must give consideration to facts outside the complaint [only] when it considers the allegations in the complaint to determine if coverage exists," Boston Symphony Orchestra, 406 Mass. at *15, this Court identifies no law explicitly prohibiting consideration of extrinsic evidence when such evidence contradicts facts alleged in the underlying complaint, and Navigators does not proffer any precedent that draws this technical distinction.  Just as there is a risk that an insured could easily create coverage by simply denying the

[20]

allegations in the complaint and coming up with a contradictory narrative, as Navigators argues, Def.'s Sur-Reply 2, there is also a risk that the underlying plaintiffs could exclude information that is "potentially detrimental to their claims, such as an admission that [Yianacopolus] provoked Cohne," Pl.'s Reply 5.

It would be unduly preferential to Navigators for this Court to give no consideration to Cohne's Answers. "[U]ntil there is an unalterable determination as to the nature of the underlying claim, any declaration of rights concerning the insurer's duty to defend cannot be conclusive." Lumbermens Mut. Cas. Co. v. Belleville Indus., Inc., 407 Mass. 675, 686 (1990). Therefore, this Court exercises its discretion to consider the extrinsic evidence that Yianacopolus attacked Cohne before Cohne resorted to force.

That said, at this stage, the Court is in no position to weigh the evidence as to provocation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."). As a result, whether Yianacopolus provoked Cohne remains a fact under genuine dispute. Nonetheless, this fact is not material to the Court's

determination on Navigators' duty to defend because, regardless of provocation, at least one of the Policy's exclusions apply.

### c. General Applicability of the Policy

The CGLC section of the Policy provides liability coverage for an "occurrence," which is an "accident." Navigators Policy 13, 27. "Accident," by definition, "implies the unexpected." Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 35 Mass. App. Ct. 239, 242 (1993). Massachusetts courts construe the word "accident" broadly in the insurance context. See Quincy Mut. Fire Ins. Co. v. Abernathy, 393 Mass. 81, 84 (1984) (noting that "the resulting injury which ensues from the volitional act of an insured is still an 'accident' within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur"). In other words, the "occurrence" provision excludes from coverage harm caused by the insured if the insured intended not only the harm-causing act, but the harm itself. See id.

The Policy itself corroborates this interpretation, as the CGLC specifies that it does not apply to bodily injury "expected or intended from the standpoint of the insured." Navigators Policy 14. Nonetheless, the CGLC carves out an exception to this general exclusionary rule, stating that "[t]his exclusion

does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." Id.

### d. Applicability of the Limitations

The Policy's Limitation section further expands the scope of those injuries excluded from the Policy's coverage. The Limitation states that the Policy neither applies to injuries arising from assault and battery committed "by any person," nor to acts connected with the prevention or suppression of assault or battery, even when such acts are intended to protect persons or property. Id. at 43. The First Circuit acknowledges that:

> [A]n endorsement or rider attached to an insurance policy becomes and forms a part of the contract; that the policy and the endorsement or rider shall be construed together; and that where the provisions in the body of the policy and those in the endorsement or rider are in irreconcilable conflict the provisions contained in the endorsement or rider will prevail over those contained in the body of the policy.

National Union Fire Ins. Co. v. Lumbermens Mut. Cas. Co., 385 F.3d 47, 55 (1st Cir. 2004) (internal citations and quotations omitted). Here, the Limitation is attached to the Policy and is intended to modify the CGLC. See Navigators Policy 43 ("This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part"). Thus, the Limitation supersedes the CGLC when the provisions conflict.

**e.  Applying the Policy to Yianacopolus' Claims**

This Court first assumes that Yianacopolus initially attacked Cohne before Cohne responded with force.  At first glance, it appears that this provocation renders Cohne's conduct eligible for coverage under the Policy.  See id. at 14 (carving out injuries "resulting from the use of reasonable force to protect persons or property" from bodily injury exclusion).  The Limitation, however, squarely excludes coverage for injuries arising from Cohne's conduct, because there is little doubt that Yianacopolus' alleged provocation was an assault.  See id. at 43 (excluding from coverage "any act . . . connected directly or indirectly with the prevention or suppression of" an assault).

Although the Limitation renders the reasonable force exception in the CGLC meaningless in this case, this Court gives priority to the plain meaning of the Policy.  See Certain Interested Underwriters at Lloyd's v. Stolberg, 680 F.3d 61, 69 (1st Cir. 2012) ("Massachusetts law dictates that we follow the plain language of the policy, even though some terms may be rendered redundant or superfluous in particular instances."); see also Ardente v. Standard Fire Ins. Co., 744 F.3d 815, 819 (1st Cir. 2014) ("[The] label ['redundancy'] surely is not a fatal one when it comes to insurance contracts . . . where redundancies abound.") (alterations in original) (quoting TMW Enters. v. Federal Ins. Co., 619 F.3d 574, 577 (6th Cir. 2010)).

This is particularly so when a redundancy does not render one provision completely frivolous.  Certain Interested Underwriters, 680 F.3d at 67-68.  Here, there still exist imaginable circumstances where the use of reasonable force to protect persons or property would not relate to the prevention or suppression of the intentional acts listed in items A through C of Limitation's section I, see Navigators Policy 43, such as during natural disasters.

Moreover, although the Limitation has a broader scope of exclusion than those that exclude only injuries resulting from assault and battery, the Policy still covers plenty of negligent conduct, and the Policy is not void as a matter of public policy.  See Surabian Realty Co. v. NGM Ins. Co., 462 Mass. 715, 723 (2012) ("A policy is not illusory simply because it contains a broad exclusion, so long as it provides coverage for some acts."); Bagley v. Monticello Ins. Co., 430 Mass. 454, 459 (1999) ("[W]here there were other instances in which coverage would still be provided under the policy," the policy was not illusory even when, "as a practical matter, application of the provision resulted in very limited coverage.") (citing Smart v. Safety Ins. Co., 419 Mass. 144, 147-48 (1994)).  As a result, the Policy does not cover Cohne's use of force in response to Yianacopolus' alleged physical provocation.  Accordingly, if

Yianacopolus provoked Cohne, Navigators does not have a duty to defend.

If Yianacopolus did not provoke Cohne, this Court's conclusion on Navigators' duty to defend stands.  Section I, item A of the Limitation excludes from coverage injuries arising from assault and battery committed "by any person."  Navigators Policy 43.  Section I further notes that "[t]his exclusion applies regardless of the legal theory or basis upon which the insured is alleged to be legally liable or responsible, [i]n whole or in part, for any Damages arising out of assault [and] battery."  Id.  Massachusetts courts read the phrase "arising out of" expansively, interpreting it as falling "somewhere between proximate and 'but for' causation -- an intermediate causation standard."  Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 7 (1st Cir. 2000); see also Bagley, 430 Mass. at 457 (specifying that phrase "arising out of" incorporates "a greater range of causation than that encompassed by proximate cause under tort law" and "suggest[s] a causation more analogous to 'but for' causation").

Moreover, it is well-established in Massachusetts that "[i]t is the source from which the [underlying] plaintiff's personal injury originates rather than the specific theories of liability alleged in the complaint which determines the insurer's duty to defend."  Bagley, 430 Mass. at 458 (emphasis

in original) (quoting New England Mut. Life Ins. Co. v. Liberty Mut. Ins. Co., 40 Mass. App. Ct. 722, 727 (1996)).  Thus, the key inquiry, assuming no provocation, is whether Yianacopolus' negligence claim against Cohne has an independent factual basis.

Cohne, relying mainly on Preferred Mut. Ins. Co. v. Gamache ("Gamache"), 42 Mass. App. Ct. 194 (1997) (vacating summary judgment for insurer because ambiguity in policy's intentional act exclusion meant claimant's allegations were reasonably susceptible of an interpretation covered by the policy), argues that Yianacopolus' negligence claim is reasonably susceptible of an interpretation covered by the Policy because his intent to injure Yianacopolus is disputed.  Pl.'s Mem. 7-9.  Cohne argues that negligence liability arises precisely because of the nature of his employment as a bouncer and, consequently, a denial of coverage "would be inconsistent with the reasonable expectations of the parties and would render the coverage afforded to Cohne illusory."  Id. at 9-10.  Navigators emphasizes that in Gamache, the insured's intent to cause harm was disputed, see 42 Mass. App. Ct. at 201, while here, the Court can infer Cohne's intent as matter of law.  Def.'s Opp'n 4.  Navigators is correct that this distinction is dispositive.

Assuming now that there was no provocation, the relevant factual basis is that Cohne committed an assault and battery outside the Club door -- "suddenly," "without any warning," and

"without provocation" -- against Yianacopolus, Yianacopolus
Compl. ¶¶ 9-10, and Cohne "negligently used excessive force" by
"striking [Yianacopolus] in the face," Yianacopolus Dep. 58, 61-
65.  These allegations describe only intentional acts of assault
and battery and could not give rise to negligence liability.
Although Cohne contends that his intent to harm is disputed,
"[t]he act of striking another in the face is one which we
recognize as an act so certain to cause a particular kind of
harm that we can say a person who performed the act intended the
resulting harm, and his statement to the contrary does nothing
to refute that rule of law."  Worcester Ins. Co. v. Fells Acres
Day Sch., Inc., 408 Mass. 393, 400 (1990); see also Liberty Mut.
Fire Ins. Co. v. Casey, 91 Mass. App. Ct. 243, 246–47 (2017)
(noting that "[i]ntent to injure has been inferred as a matter
of law in only a few" situations and recognizing striking
someone in the face as one such situation).  Thus, the Court
infers, as matter of law, that the harm here is intentional.

Using the word "negligently" to modify "used excessive
force" does not render intentional conduct negligent.  Lewis v.
City of St. Petersburg, 260 F.3d 1260, 1263 (11th Cir. 2001)
("[I]t is not possible to have a cause of action for 'negligent'
use of excessive force because there is no such thing as the
'negligent' commission of an 'intentional' tort.") (internal
citation omitted); see also District of Columbia v. Chinn, 839

A.2d 701, 707 (D.C. 2003) (stating that for an unwanted touching "which escalates in an unbroken manner into excessive force, the cause of action is a battery alone"); City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996) ("If excessive force is used in an arrest, the ordinarily protected use of force by a police officer is transformed into a battery."). Therefore, all the harms derive from Cohne's assault and battery; Yianacopolus' negligence claim does not have an independent factual basis. See Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 371 (1996) (holding that there is no duty to defend for a "negligence claim which is premised on the same acts which are contended to be the basis of an intentional sexual misconduct claim"); United Nat'l Ins. Co. v. Parish, 48 Mass. App. Ct. 67, 70(1999) ("[W]ithout the underlying assault and battery, there would have been no personal injuries and, therefore, no basis for a suit against the insured for negligence."); New England Mut. Life Ins. Co., 40 Mass. App. Ct. 722, 727 (1996) (determining that there is no duty to defend against a negligence claim when there would have been no injuries without the underlying illegal acts omitted from coverage by exclusionary clause).

Cohne references Gamache to show how a dispute over intent to harm can give rise to a duty to defend. Pl.'s Mem. 7-8. This reference is inapposite because, in Gamache, the insured

was intoxicated and thus his "mental capacity to form the requisite intent [was] a disputed material issue." <u>Gamache</u>, 42 Mass. App. Ct. at 201.  Here, the Court may infer Cohne's intent to harm as matter of law.  Although the Massachusetts Appeals Court noted in <u>Gamache</u> that "[i]nferring intent to injure as matter of law" is only recognized in a few enumerated situations, <u>id.</u> at 200, it has clarified in a more recent case, <u>Casey</u>, that striking another in the face belongs on this list, 91 Mass. App. Ct. at 246-48.

As a result, even assuming no provocation, Yianacopolus' negligence claim derives from Cohne's assault and battery and lacks an independent factual basis.  This claim is thus barred from coverage by item A of the Limitation's section I.

In sum, the parties' factual dispute as to provocation is immaterial because the Policy's Limitation excludes Yianacopolus' claims against Cohne in either instance.

> 3.  **Cohne Is Not a "Named Insured" under Section II of the Limitation**

Cohne further attempts to rely on section II of the endorsement as an exception.  <u>See</u> Pl.'s Mem. 15-17.  This section states that Navigators will pay up to $250,000 that "<u>you</u> become obligated to pay for all damages and claim expenses which result from claims or 'suits' based on allegations of any of the acts or omissions" in section I.  Navigators Policy 43 (emphasis

added).  Section I includes assault, battery, and acts or omissions connected with the protection of persons or property, types of conduct normally excluded from the Policy's coverage. Id.  The CGLC provides that "[t]hroughout this policy the words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."  Id. at 13.  Cohne seeks to bring the underlying complaint back under the coverage of the Policy by arguing there is ambiguity in the contract and that he ought qualify as a "Named Insured."  Pl.'s Mem. 10-17; Def.'s Opp'n 7-11.

In Massachusetts, "contract interpretation is a question of law for the court unless the contract is ambiguous."  Nicolaci v. Anapol, 387 F.3d 21, 26 (1st Cir. 2004).  Under Massachusetts law, contract "[l]anguage is only ambiguous 'if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one.'"  Barclays Bank PLC v. Poynter, 710 F.3d 16, 21 (1st Cir. 2013) (quoting Lass v. Bank of America, N.A., 695 F.3d 129, 134 (1st Cir. 2012)).  "Ambiguity is not created merely because the litigants disagree about the meaning of a contract."  Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 783 (1st Cir. 2011) (quoting Nicolaci, 387 F.3d at 26).  When contracts are free from ambiguity, they are "interpreted according to their plain

terms" and a court construes "all words according to their usual and ordinary sense." Poynter, 710 F.3d at 21 (internal citations and quotations omitted).

Here, there is no ambiguity in the language of the Limitation. The Policy clearly defines "you" as referring to both "Named Insured shown in the Declarations" and "any other person or organization qualifying as a Named Insured under the policy." Navigators Policy 13. At the outset of the Policy, the Declarations clearly define BBC as a "Named Insured." Id. at 3. There is no other provision in the policy that provides for entities other than BBC to qualify as a "Named Insured." See generally id. at 1-54. The fact that the Declarations name only BBC signifies that "you" refers only to BBC.

Courts in this and other jurisdictions have found ambiguity as to whether endorsements that add coverage for an "additional insured" qualify the "additional insured" as a Named Insured. See, e.g., Marathon Ashland Pipe Line LLC v. Maryland Cas. Co., 243 F.3d 1232, 1241-42 (10th Cir. 2001); Wyner v. North Am. Specialty Ins. Co., 78 F.3d 752, 755-57 (1st Cir. 1996). This Court has identified no instances in this circuit in which a court has found an insurance policy ambiguous because it defined the term "you" to refer to both the Named Insured and any other person or organization qualifying as a Named Insured without specifying additional entities that would so qualify. Indeed,

courts in a number of cases have found no ambiguity where a
Policy refers to "you" just as here, not defining "Named
Insured," and not qualifying any entity as a "Named Insured"
besides the one listed in the Declarations.  See Michigan
Millers Mut. Ins. Co. v. Asoyia, Inc., No. 3:11-00006-CFB, 2013
WL 11616466, at *11 (S.D. Iowa Nov. 6, 2013) ("'Named Insured'
is a term of art specific to the policy, wholly separate from
'insureds' of classes (e.g., employees) that are covered by
virtue of their relationship to the Named Insured."), aff'd, 793
F.3d 872 (8th Cir. 2015); Chet Morrison Contractors, LLC v. One
Beacon Am. Ins. Co., 132 F. Supp. 3d 825, 831 (E.D. La. 2015)
("Although 'named insured' is not further defined in the
contract, the term's meaning is abundantly clear: the Policy's
declarations page lists Offshore Marine Contractors as the only
named insured on the Policy."); EMC Ins. Cos. v. Mid-Continent
Cas. Co., 884 F. Supp. 2d 1147, 1156–57 (D. Colo. 2012)
(determining that "Named Insured" "clearly and unambiguously"
refers to the Named Insured shown in the declarations when "no
other provision in the policy, nor any other endorsement or
amendment, speaks to qualifying as a 'Named Insured" or adds a
'Named Insured.'")).  Since there is no ambiguity in the text of
the Navigators Policy, this Court reads "you" to refer only to
BBC.

This construction is the most consistent with other Policy provisions.  For example, the CGLC provides in section II, "WHO IS AN INSURED," that "your 'volunteer workers' . . . or your 'employees'" could count as an insured for "acts within the scope of their employment by you."  Navigators Policy 21-22. Such provisions only cohere when "you" excludes employees like Cohne.  Also, section I of the CGLC provides that Navigators will "pay those sums that <u>the insured</u> becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  <u>Id.</u> at 13 (emphasis added).  The fact that "the insured" is used in this provision, rather than "you" as in section II of the Limitation, suggests that "the insured" and "you" are distinct.  <u>Compare</u> <u>id.</u> 21-22 <u>with</u> <u>id.</u> at 13.

Cohne argues that "you" includes him because the word "Limitation" indicates it "only reduces the policy limits and does not preclude all coverage for the enumerated claims." Pl.'s Mem. 11-13.  This argument lacks support.  All the cases Cohne cites on this point are from other jurisdictions and relate to policies with provisions specifying that the limitations merely set an upper cap for their coverage of certain claims.  <u>See</u> <u>Gemini Ins. Co.</u> v. <u>Earth Treks, Inc.</u>, 260 F. Supp. 3d 467, 483-85 (D. Md. 2017) ("Sexual Abuse and Molestation" endorsement applied to claims against insured but

[34]

limited coverage to $100,000), aff'd, 728 F. App'x 182 (4th Cir.
2018); First Mercury Ins. Co. v. Sudderth, 72 F. Supp. 3d 1328,
1331 (N.D. Ga. 2014) ("Assault and Battery Endorsement" set
coverage limitation of $100,000 for all insured entities for
claims for bodily injury or property damage arising out of
assault or battery); North E. Ins. Co. v. Masonmar, Inc., Civ.
A. No. 1:13-364 AWI SAB, 2014 WL 1247604, at *1 (E.D. Cal. Mar.
25, 2014) ("Assault and Battery Limitation" to Commercial
General Liability Policy limited coverage to $100,000 for all
insureds for claims resulting from assault and battery);
American Safety Indem. Co. v. Loganzo, 967 N.Y.S.2d 417, 418
(App. Div. 2013) (granting declaratory judgment for insurer that
assault and battery endorsement's $100,000 limitation applied to
battery claims against insured bar).

Cohne's argument that excluding him from definition of
"you" would lead to an unreasonable result and render coverage
for him illusory is also unavailing because the Policy still
covers negligence claims against him.  See Surabian Realty, 462
Mass. at 722.

Consequently, Cohne is not a "Named Insured" and section II
of the Limitation does not bring the underlying allegations
under the Policy's coverage.  Navigators does not owe Cohne a
duty to defend in the Yianacopolus action.

**C.    The Maltacea Action**

Maltacea alleges, and Cohne does not contest, that Cohne "without provocation, right, or reason, struck and beat [Maltacea] with a metal baton and caused [him] severe physical injuries."  Maltacea Compl. ¶¶ 9-10; see generally Pl.'s Mem. The analysis here is similar to that in the Yianacopolus action.

First, there are insufficient facts for this Court to determine whether Cohne is an "insured."  Although the facts on which the parties agree seem to satisfy the first and second Wang Labs. prongs, as the incident occurred at the Club during Cohne's shift, see Maltacea Compl. ¶¶ 9-10, the parties have supplied insufficient information for the Court to determine whether the facts also satisfy the third Wang Labs. prong and the Miller requirement.  As the Court cannot conclude as matter of law that Cohne's actions toward Maltacea were within the scope of his employment, this Court declines to grant summary judgment for Cohne regarding Navigators' duty to defend in this action.

Second, even if Cohne was within the scope of his employment for the Maltacea incident, the Maltacea allegations are excluded by item A of the Limitation's section I.  Although Maltacea brought a negligence claim against Cohne, the facts alleged point to an assault, see Maltacea Compl. ¶¶ 9-10. Following the same rationale as detailed in the corresponding

part of the analysis of the Yianacopolus action, there is no independent factual basis for the negligence claim.

Third, following the Court's reasoning as to the Yianacopolus action, Cohne does not qualify as a "Named Insured," so Section II of the Limitation does not bring Maltacea's allegations back under the Policy's coverage.

In sum, Navigators does not owe a duty to defend Cohne in the Maltacea action.

### III. CONCLUSION

For the foregoing reasons, this Court DENIES Cohne's motion for summary judgment, ECF No. 25, and declares that Navigators has no duty to defend Cohne in either the Yianacopolus or the Maltacea action.  As the parties requested, this case will be administratively closed to await the outcome of those actions. At that time, any party may reopen this action should further proceedings appear necessary.


**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE